This is our last case today, and it is Cortez v. Carle Clinic. That's 410-0515 for the appellant. We have Kenneth Bland, Jr. for the appellee. William Brinkman, Mr. Bland. May it please the court. So that the timeline is clear on this, your honors, this started out as a Lincoln County case. There was a Rule 218 order in place. That order required disclosure of the defense witnesses by the 15th of September of 2008. That was timely complied with. On April 20th of 2009, Mr. Brinkman subpoenaed the CT scans that are at issue in the case. The trial setting under the Rule 218 order was August 10th of 2009. It did not go to trial then because in the interim I had dismissed the Decatur plaintiffs. Mr. Brinkman moved to transfer the case to Champaign County. It came to Champaign County then as a fully developed case. Both sides announced at the case management conference, the first conference, that the case was in a posture ready to be tried and it was placed on an expedited calendar at that point. It went to trial on the 8th of March of 2010. Mr. Brinkman's letter dated the 7th of January was received by us on the 11th of January. Even as the 7th, given that February is a short month, it would have been within 60 days of trial in any event. That was the first occasion when there was any mention that any defense F3 expert intended to rely upon and interpret the CT scans taken at St. Mary's Hospital. That was completely new information. It formed both a new basis for the disclosed opinions regarding cause of death and in addition to that it was actually a new opinion in that they were now being disclosed as experts who would interpret the CT scans. This was a clear violation of Rule 213. As pointed out in the brief, none of the F3 witnesses, up to the point at which Dr. Berlin testified, did anything beyond their original disclosures in the case insofar as the cause of death is concerned. And those disclosures concerned the contents of the chart at St. Mary's in Decatur. It was with Dr. Berlin then that there was a variation from what was disclosed, properly and timely disclosed, back in September of 2008. At the earliest opportunity, and I think there is no dispute about this, there was timely objection. The court properly asked Mr. Brinkman to establish that the disclosure had been made and Mr. Brinkman referred to the January 7 letter. The court found two things. It found that in light of the letter, I should not have been surprised at the testimony, but more importantly found that it did not constitute a breach of Rule 213. Isn't a CT scan part of medical records? Your Honor, I would analogize the CT scan or the use of the CT scans in this case, for example, to blood samples, tissue samples, where if, and this happens frequently in medical malpractice cases, one or sometimes both sides want to have the pathology results independently evaluated. So they'll withdraw those from the hospital and send them out, oftentimes under a protective order, to their individual experts. The CT scans themselves don't appear in the chart when you order the chart. What they were referring to at the time of the original disclosures was their review of the chart, which contained the interpretations of the radiology department of what the CT scans showed. And in fact, in the testimony at trial, the other witnesses referred to those interpretations without objection. The CT scans were in nobody's possession in the case, other than St. Mary's Hospital, who was not a party, up until April of 2009, seven months after the close of opinion disclosure, when they were subpoenaed by Mr. Brinkman. So it's really a tempest in a teapot as to whether they're medical records or not. I would assert they're not. The trial court attempted to make that analogy. But the fact of the matter is, they were not in the possession of the defense when the timely disclosure was made. At some point between when the actual scans or copies of the scans were obtained in response to the subpoena, the April 2009 subpoena, and January of 2010, Dr. Berlin looked at them. And based on his having looked at them, then the untimely disclosure came out that said, oh, by the way, our F3 witnesses have looked at the CT scans, and they intend to include those as the basis of their opinions regarding the cause of death and interpret what's on the scans. So the scans were a supplemental basis for the opinions they'd given you pre-existing? No, they substantially changed the opinions. From what to what? Previously, the opinion had been, for example, with... Dr. Berlin is the guy at issue, isn't he? Yes. And actually, Dr. Berlin was never deposed. Dr. Berlin's opinions, he was deposed. He was not deposed in F3. However, his opinion prior to what was subsequently disclosed said, in relevant part, that the cause of death was most likely pseudomembranous colitis, and that he had reviewed the chart of St. Mary's Hospital and found nothing in the report of the CT scans that was consistent with death having been the result of the abscess, in that there was no evident explanation of that finding. That was an opinion taken in the context of his review also of the deposition transcripts, which included the deposition of the pathologist, who explained how it was that in fact there was such a chart. So, when he said he disagrees with that finding, that's fine. That's in the case. But what was not in the case was anybody saying, I've looked at the CT scans, other than to the extent that the pathologist had had a discussion with other members of the St. Mary's staff about it. And based on my review of those CT scans, it is my opinion that death could not have been due to the infected decubitus. And here's what would be on the CT scan if in fact there was a channel between the decubitus and the infection adjacent to the psoas muscle. So, how did his opinion change? His basic opinion regarding the cause of death did not change. The basis for the opinion, and as the Court pointed out for yourself in the Kroll case, Rule 213 requires not just that the opinions, but also the bases of the opinions, be fully and timely disclosed. That was a significant basis, and it was prejudicial because had the actual interpretation of what was on the CT scans, as opposed to what was in the records of the CT scans, been a part of the case in a timely fashion, we could have brought in the radiologist from St. Mary's, we could have brought in an independent expert to respond to that argument. It had never been in the case up to that point. So, when I said to the other F3 witnesses who was in the best position to judge, they admitted that the pathologist was. So, when you received this information, you complained to Judge Jones that you asked for continuance to obtain this additional evidence? I did not, Your Honor, and that was one of the issues that Judge Jones mentioned. Why didn't you? I'm sorry? Why did you not? Why did I not? Yes. Because we're in the 4th District, and I believe in the 4th District we have a clear line of authority in terms of what the obligation is of both sides under Rule 213. And I would particularly call the attention of the panel to your language in the Kroll case, declining to impose an obligation on counsel to tell the other side what's missing in their case, what's wrong with their case, or to go in and say in advance, Judge, you have to bar this. What I did do was file, among other motions in limine, a motion in limine that required both sides be limited to the confines of the disclosed opinions. What was under Rule 213? I'm flattered, Counsel. You cite Kroll a lot. I wrote it. I meant it. 213 has been changed since Kroll was written. We've had several Supreme Court decisions since Kroll was written. I suppose the general theme is still accurate, but it seems to me that it's been 11 years, I think, since Kroll was written. And we've had lots of changes, including the Supreme Court saying that this is now a matter where trial judges should be using their sound discretion in deciding whether Rule 213 violations have occurred. Isn't that correct? That's true. But Sullivan hasn't backed off and, in fact, cited with approval to the Kroll decision. Language in White recognized that. I wrote White, too. Yes, sir. But it's all still – I suppose as we analyze this, though, my question is why could no reasonable person have taken the position that Judge Jones did with regard to the CT scans and how this was not either a total surprise or totally new discovery information? If you look at the narrow issue of the cause of death being what's at stake in that part of the analysis, yes, his opinion's not new. He didn't change his opinion that the cause of death was pseudomembranous colitis as opposed to what the pathologist attributed the primary, most likely cause of death, being. That didn't change. But the whole nature of the case, the strategy of the case, was markedly changed and prejudiced when now, instead of relying on the records and what he had seen at the time that the disclosure was made, all of a sudden we've got a basis for an opinion and a jury being told that here's the CT scan and guess what? I now am interpreting it for you. And remember, interpretation was not any original part of the disclosure. And as you can plainly see here, there's no channel. Well, that may have been plain to the jury based on the evidence that they saw, but the trial strategy that was put together, the decisions that were made – So up to that point you were going to argue that Dr. Berlin was not believable or not persuasive because he relied upon the report of other experts regarding what the CT scan showed as opposed to his personal examination of the CT scan? Is that the difference in this case? I think his having the actual scans there and putting them up and interpreting them for the jury changed the entire nature not just of his testimony. But if I stated it correctly, up to that point he was going to render the same opinion based upon other experts who had looked at the CT scans that he later looked at. Isn't that correct? Let me see if I understand the question correctly. Prior to his looking at the CT scan, he was under the same opinion. And he based that opinion, in part, upon other experts who had themselves looked at the CT scan and reported it. Isn't that correct? It's correct insofar as your statement goes, Your Honor. So the only difference is, now in addition to relying upon what those other experts said, he has considered it himself and he agrees with them. Well, no, because that specific issue of whether or not there was a channel wasn't addressed in the radiology reports. Well, that's why he agrees with them. But he agrees with them. He's now looked at it himself and his opinion is still the same. The radiologist at St. Mary's was not expressing any opinion about the cause of death or about whether, in fact, there was a relationship between the infected decubitus and the sepsis which Mrs. Cortez was suffering from. They were just reporting what they were seeing. The pathologist who testified in the case indicated that he had spoken with other physicians in reaching his conclusions. And then he demonstrated to the jury how, in his opinion, there was a transmission of the infection from the sacral decubitus to the area where the sepsis likely originated. So what Dr. Berlin did in relying on and utilizing the CT scans themselves was to undermine the pathologist's opinion. Granted, his cause of death opinion wasn't any different, but it was testimony that nobody else in the case, on the defense side, went to. And it was, importantly, something that the plaintiff was not prepared to rebut. Prior to trial, you moved to bar this opinion based upon Dr. Berlin's examination of the CT scan? No, sir. I did not specifically move to do that. You did it at trial? I did it at trial. When he testified? During Dr. Berlin's testimony, when it became evident that he, in fact, was going to talk to the jury about the St. Mary CT scans. Why didn't you move prior to trial? A couple of reasons. Number one, I really believe I'm entitled to rely on the fact that the case was set. How is that inconsistent with you making a motion to eliminate prior to trial to make sure that the judge is on the same page as you and it should be better? It's not inconsistent, but I'm not obligated. So why didn't you do it? I didn't say you were obligated. I want to know why you didn't do it. Partly, I think I didn't do it because I've litigated a lot of cases with Mr. Brinkman and it didn't really occur to me that he would do something that was clearly beyond the rules. So, in that sense, I was surprised. Well, it was two months earlier he told you this letter that this is what he's going to do. Not quite two months. Well, almost. I don't disagree with that. But I was certainly surprised that that happened. So you thought the letter was just, hello, Ken, how you doing kind of letter as opposed to putting you on notice of something? The letter was a lot of things, Your Honor. It dealt with adoption of witnesses by a party that was no longer in the case. One of our witnesses was going to testify too. It also dealt with, then, this issue, then some scheduling issues. Mr. Brinkman's a pretty serious guy, doesn't he? Oh, there's no question about that. So this was, you know, I got this new stuff here. So, but you were surprised when he actually offered the evidence? I was surprised that he would in the context of this case as long as it's been going. See, Mr. Bland, if I'm the trial judge, I don't really like this. I don't know if Judge Jones mentioned it, but I'd say, gee, you know, you were told some weeks ago that this was going to come up. And we're now in the middle of trial and you didn't make a motion to eliminate a BART? I'm, because also if you made a motion to eliminate a BART, we could have seen about other things that could have been done. We could have discussed, the judge and I, you could have discussed the business of whether a continuance would be appropriate, what kind of evidence you'd want, whether there should be any other limitations imposed upon Mr. Brinkman. Essentially, all kinds of things could have happened. Maybe you've wired your examination of Dr. Berlin. But you see, when you wait until the middle of trial and you've got a jury sitting there, now this is just kind of a crap shoot. You're just there on the judge to let it in, aren't you? I'm relying on the judge not to let in improper material. Well. Mill Culpa, if that was inappropriate. But I strongly urge the court that it was a violation and should have been excluded. Before your time is up, I want to ask you about the nurses. Who were the nurses who treated, Carl, who treated your client? The individual names? Yes. As we stand here, I can't. I can't. How is that possible? You filed suit in 2004. This case went to trial in 2010. Did you ever ask? I actually took several nurses' depositions. And you don't know who it was? I mean, the medical records and nothing else showed who these people were? They do. Absolutely, they do. But you never sued them or named them individually, did you? I did not name them individually. Why not? Because as a general principle, unless it's egregious, I don't name nurses as defendants. Isn't that a problem if you're trying to establish agency to make the hospital the principal when you don't name who the agents are? In this case, there were evidentiary admissions of agency earlier on, and then we had the head nurse on the trauma unit testify. She identified that all of the nurses, and for summary judgment or directed verdict perspective, the only evidence in the case was that all of the nurses who worked on or provided care to Mrs. Cortez were employees of the hospital. There's no contrary evidence. That's the record. Thank you. You have time to rebuttal. Thank you. Mr. Brinkman. Your Honor, may I please report? Go ahead. Your Honor, in this case, the trial court held that there was no Rule 213 violation because the CT scan was a part of the medical record. It was clearly and properly disclosed that Dr. Berlin's opinions would be based on the medical records in the case, and specifically in the 213 disclosure it states that Dr. Berlin will further testify with regard to his review of medical records of the decedent after her discharge from Carle Hospital. The CT scan, the records from St. Mary's Hospital are records from after the discharge at Carle Hospital. When the disclosure by Dr. Berlin and the other defendants were made, discovery didn't close at that point. It didn't end at that point. When did it end? It ended May 31st of 2009. When did you furnish the supplemental report from Dr. Berlin? Pardon me? When did you furnish the supplemental report from Dr. Berlin about his examination of the CT scan? We did not furnish a supplemental report from Dr. Berlin because the CT scans did not change any of the opinions that we had originally disclosed. They, in effect, confirmed what the records were. Isn't that a change? In other words, if an expert says, I'm of the opinion that no malpractice occurred because of X and Y, and then when he comes to testify and he says because of X and Y, and then there's Z. I mean, isn't Z something that he's got to be told about in a timely fashion? Well, I would say that he was told about it, number one, but first of all, the original disclosure states that the basis for the opinion is the medical records, including the records of St. Mary's Hospital, which we contend the CT scan is a record of St. Mary's Hospital. Secondly, they had noticed that we had obtained the CT scans. We sent them a notice of the subpoena. They were, at the time that I received them, asked if they wanted copies. The X-rays of the CT scans were not for me to look at. They were for the doctors to look at. So it was evident or should have been evident that he was looking at them, but my thought process was this is part of the medical record. We wanted to look at those. When did you subpoena them? We subpoenaed them about six weeks before the close of discovery. So it was in April of 2009, before the close of discovery. But after looking at the CT scans, it did not change any of the opinions that Dr. But isn't Mr. Bland correct, though, that the case law talks about not just the opinions but the basis, therefore, and you added a basis, didn't you? The basis, as Judge Jones found, was that the opinion was based on the medical records. And, in fact, all of the disclosures as to all of the witnesses on both sides, in this case, state the opinions are based upon review of medical records, based on review of depositions, pleadings. Well, this is kind of – it's true it's based on the medical records, but it's a medical record that prior to that point he didn't have, and it's a particularized one in that, isn't it? I mean, this sounds to me, as Mr. Bland described it, it seems to me he's right, that this was a rather different presentation by Dr. Berlin than the one he was going to make prior to his examination of the CT scan. Isn't that correct? Well, the opinions that he was going to give all along and never changed was that the colitis was the cause of death. What he was doing was showing the jury, as well as telling them, through the CT scans, the colitis. It's not in dispute in this case that colitis was found on autopsy, and the issue was what was the cause of death. And so his opinion that colitis was the cause of death was never changed in the case. All of the witnesses in this case, all of the doctors, talked about their interpretations of the various medical records. Dr. Mishoda, the expert for plaintiff, testified at length as to his interpretation of lab reports and physician's notes. Dr. Vasquez, the surgical expert for the plaintiff, testified at length with regard to his interpretation of the autopsy record. But Dr. Berlin's testimony is what's at issue. Isn't Mr. Bland correct that his testimony was rather different and rather more powerful or persuasive, given the actual CT scans themselves that he used, while testifying? Well, his objection is that he testified to his interpretation of the CT scan. My point is that all of the doctors talked about their interpretations of the records. And so the question becomes, is the CT scan a record? That's what Judge Jones considered, and that's what Judge Jones found, that the CT scan was a record. It was disclosed on a timely basis that, number one, we had it. Number two, he was relying on the records. That was the basis for his opinion. The plaintiff is not challenging the admissibility of the conclusions of Dr. Berlin. Those stayed the same throughout. He's challenging the use of the CT scan as a basis. And as I've said, all of the doctors, experts on both sides, interpreted records when making disclosures. It's not typical that you would say my disclosure is based on medical records, including lab reports, nursing notes, physician orders, and then interpreting them as part of the disclosure. Well, let me add this, Mr. Brinkman. Counsel's correct. I wrote Kroll and the Garlock case, and one of the themes of both of those was a concern that I think has been court-approved. It's all been the avoiding gamesmanship and the sporting theory of discovery. It seems to me that there's a real risk here. If we accept these distinctions you're trying to draw, that we're going to open the door for disclosures that might look technically accurate but are rather incomplete, that Dr. Berlin's however you slice it and explain it, the testimony Dr. Berlin gave is rather more compelling and dramatic than the testimony prior to the CT scan examination by him. His testimony wasn't going to be nearly that persuasive from your point of view. Isn't that true? That certainly is an argument. I would suggest that his testimony was going to be either persuasive or not persuasive, and the real issue here is was there a proper disclosure. But I'm just concerned that if we affirm in this case, aren't we opening the door for similar split hairs between, hey, the medical records, say we're going to rely on the medical records and everything that could possibly be included within the medical records, you're on notice that we're going to rely on and take your best shot and prepare it. I don't think that's what 213 was designed to do. That's in fact what happens though, Your Honor. Well, I'm not sure that's a good thing, Mr. Brinkman. Maybe that's not what should be happening. The parties in this case all said the same thing, that their opinions were based on the medical records. Well, you subpoenaed the CT scans, correct? I did. The opposing counsel was aware of that. He was. How much in advance of the trial was plaintiff's counsel aware of? Well, in April of 2009, the trial was in March of 2010, so it would be almost 11 months. Were plaintiff's experts privy to the CT scans if requested? Yes. Did they request them? They did not. The letter of January 7th of 2010 was not intended to be a disclosure letter. It was a letter covering some loose ends, and I in that letter offered again a second time to make copies of the CT scans available to the plaintiff. What did you say about Dr. Berlin and the CT scans in the letter? In the letter I said that Dr. Berlin, Dr. Turner, and Dr. Gupta have all reviewed the CT scans. I said that you are aware we subpoenaed them. They have considered the CT scans as a part of the basis of their opinions. And then I asked the question, do you want to have a copy of them? And then I went on to the next topic. So that's what I said in that letter because it was within two months of trial, and he had not yet gotten a copy of the CT scans. I asked Mr. Bland at the end of his argument about the nurses. I want to ask you about that too. Tell me about this motion for directed verdict as to the hospital. Yes, Your Honor. In this case, the pleading by the plaintiff, the pleading that we were trying the case under was, I believe, the second amended complaint. And in that pleading, the plaintiff alleged that in the same paragraph that Carl Clinic and Carl Hospital each provided nurses to care for patients in the hospital such as Dawn Cortez. We admitted that they both supplied nurses that worked in the hospital. But we denied that. And at the time, these are separate legal entities? They were separate and distinct legal entities before the merger. So these were two separate employers of nurses working in the hospital. During the trial, the plaintiff's expert and no other witnesses identified by name the nurses who were claimed to have been negligent. And they didn't connect up which nurse was employed by which defendant. Didn't Bond testify they were all employed by the hospital? Kathy Bond is a nurse employed by the hospital. She was called when the plaintiff was allowed to reopen the case after we had filed a motion for directed verdict. She testified that it was her assumption that all of the nurses that worked in the hospital were employed by the hospital. On cross-examination, it came out, number one, that she wasn't present at all of the times when nursing care was provided. And secondly, that when she said that they were all employed by the hospital, that was her belief, but she had no personal knowledge. So your position to the judge at trial and to us is that some of the nurses may have been employees of the clinic? Yes, that was admitted in the pleading charge, that some of the nurses involved at the hospital in providing care to patients were employees of the clinic. And not of the hospital? And not of the hospital. How does that work? I mean, just, I don't understand what that means. Well, the Carl Clinic has nurses that work for the clinic. When the doctors who are employees of the Carl Clinic come over to the hospital, they often bring their nurses with them. There are nurse practitioners. The orthopedics department has nurses that makes rounds. There are a variety of different types of nurses. So the allegedly negligent nurse, whoever that was or nurse is, according to the plaintiff, may have been employees of the clinic as far as this record shows? We don't know who they were. Well, but the point is, it was the hospital who moved for a directed verdict, wasn't it? Yes. On the grounds that there was no evidence tying up the hospital? The clinic, I guess, there was no directed verdict as to the clinic, was there? No. The doctors were employees of the clinic. Okay, so there was no question about that. That went to the jury, and it was the jury that came in with the not guilty verdict? Yes. And the hospital's liability would be premised upon the nurses? Yes. And your claim is the plaintiff failed to establish that the nurses were hospital employees?  He didn't identify, number one, which nurses were negligent. Number two, who employed them if they were negligent. This was six years earlier this case had been filed. You heard my question to Mr. Bland. Were you involved in the discovery throughout this case? I was. Was it never asked who are the nurses by name? Not specifically. I mean, the medical records showed who the names of the nurses were. They signed their nursing notes. Yeah, I would think this would not be a mystery to have to stop you from figuring out who's who and who they worked for. It was just something that wasn't proved during the course of the trial. Is it your position the nurses had to be named individually as defendants, or they just had to be specified as being negligent within the case itself? It's my position they did not need to be named as a defendant, but if they were seeking to hold their employer, Carl Hospital, liable on a respondeat superior basis, then it was the affirmative duty of the plaintiff to identify which nurses were negligent and then connect them by employment to Carl Hospital. To demonstrate their negligence and their employment by the hospital. Right. And that didn't happen? No. In the deposition of the plaintiff's expert, I asked her, the nursing expert, have you identified any of the nurses by name or by licensure? Are they registered nurses? Are they nurse practitioners? Are they LPNs? Are they nursing assistants? And her answer was no. And that was the same answer at trial. I didn't ask that question at trial, but there was no evidence at trial. And you admitted that in the answer that nurses were employees of both the clinic and the hospital? Right. That answer was what, back in 2005? Well, there were several amendments to the complaint, and the answer that I was referring to, the complaint was amended four days before trial, March 4th. And so in the answer that I filed on March 8th, that's when I admitted that both the clinic and the hospital employed nurses who worked in the hospital, but denied that any nurses providing care to the plaintiff were negligent. Were there earlier answers in which you had said the same thing? Earlier pleadings were different in that they didn't combine the claim in one county against both defendants. So there were earlier pleadings where it was alleged that Carle Hospital provided nurses to serve patients in the hospital, and I admitted that. And I also denied that any of the Carle Hospital nurses were negligent in the earlier pleadings. Were there earlier pleadings that asserted that Carle Clinic provided nurses? I don't think there was. I think that the earlier pleadings said that Carle Clinic provided personnel. So shortly before trial there's a pleading that says, Carle Clinic and Carle Hospital provide nurses, and you said that's right? Yes. And denied that they were negligent? Yes. The trial court allowed the plaintiff to reopen the case for the agency issue. When did that occur when the bond was called to testify? Was that after your case, or do you recall? At the close of the plaintiff's case, we made our motion for a directed verdict, and the court then indicated that he would reserve ruling and give them an opportunity to reopen their case. My recollection is that we were almost done with our evidence, or were done with our evidence on the defense side before Kathy Bond was called to the stand. Was she the only one? She was the only one. And we, in addition to her not really having personal knowledge as to employment, we have raised the argument that you can't prove agency through the agent, that there has to be some act of employment. But you say you were almost finished with your case. Was that the next day, several days later? It was a couple days later. I think it was on Monday that we had a Friday off. Thank you. Thank you. Rebuttal, please. My recollection, Your Honor, and I think the record will bear me out on this, is that Judge Jones did not let any questions on cross-examination during the defense case go to the issue of agency. He then allowed me, however, to recall her, and by agreement that was done outside the presence of the jury but taken as a part of the case, and that's when the testimony took place in which she identified the fact that, and this was her testimony, all of the members of the nursing staff caring for patients on the trauma unit were, in fact, employed by the hospital. All of the bedside medical surgical unit, intermediate care, critical care unit, and the nurses on the trauma care team were employed by the hospital. And then in addition in those earlier pleadings, there was an evidentiary admission that has never been rebutted, that those nurses in question were employed by the hospital. Were there nurses disclosed in discovery who could have testified but just weren't called? Yes. There was really nothing to be added by their testimony. There was no reason to call them on the standard of care issues and the cause of death issues in the case. It just would have extended the trial. Mr. Brinkman pointed out in the cross-examination of this witness that she apparently was just speculating and didn't really know. He said in leading fashion, it's an assumption on your part, she said yes. She's been there 26 years. Well, what do you mean leading fashion? You can lead on cross-examination and the answer yes stands, doesn't it? That's true, Your Honor, but this is a directed verdict. So the evidence has to overwhelmingly favor the movement. We had evidence. Well, you have to establish a prima facie case. What's the prima facie case of agency? It's a prima facie case for a couple of reasons, number one being the evidentiary admissions from the prior pleadings. What evidentiary admissions? When Mr. Brinkman, in responding to the other complaint, the first admitted complaints, admitted that the hospital employed the nurses who provided the care. That's an evidentiary admission. That's in the record. Just to keep the trial simple, after I dismissed all the individual physician defendants,  and that's when it was combined, and then what he pleaded was neither admit nor deny. So that was the reason Judge Jones allowed me to reopen and put on that testimony. That was the only testimony in the record, that those nurses were employed by the hospital. I don't know what more we can do. How about identify the nurse by name and ask? And say who do you work for? Yeah. Could have done that. That would have solved the problem. How hard is that? I don't understand. I never heard of an agency where you haven't identified the agent by name. You didn't have to sue them. Until the morning of trial when that answer was presented, there wasn't even an issue about it. And I looked at it and I said, well, wait, we've got judicial admissions. I was thinking judicial admissions. They weren't judicial admissions. They were evidentiary admissions. It's not an issue in the case. Until it was raised. We were allowed to reopen. We reopened. We put on the best proof that we had. And Mr. Brinkman said a moment ago, you can't do it through the agent. That's what he argued in his brief. That's not true. You can do it through the agent, and the case law is clear on that. Well, that's not an issue. We don't have an agent who says, yeah, I was the nurse, I treated her, and I worked for Carroll Hospital. And so did everybody else on the trauma care team. But we don't have that testimony is what I'm saying. If we had that testimony, then Mr. Brinkman could make his argument about that's insufficient to establish agency, but we don't have it. Evidently, I'm not communicating strongly enough that, yes, we do have it because Nurse Bond testified to it. But she wasn't the one. Was she the one who was charged with negligence? What she said was that all of the nurses who provided the care were employed by the hospital. All of the nurses. And those were the people who were the subject of the criticism of our nursing standard of care expert. On your question to Mr. Brinkman, yes, I think it would open up a Pandora's box for this court to retreat from the black-line principles that it had previously enunciated. And I think the court see said this is the law. It's a bright-line test, and it needs to be a bright-line test. And when you start making exceptions on disclosure, that's when we get in trouble. Just tell me what the rules are so that I know what I need to follow, and I'm happy. Thank you, counsel. The case is submitted in the court.